UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FIFTH THIRD BANK, MICHIGAN, INC.                                         APPELLANT

v.                                                          CIVIL ACTION NO. 3:10-CV-478

JPMORGAN CHASE BANK, N.A., et al.                                  APPELLEES

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on an appeal by Fifth Third Bank, Michigan, Inc. ("Fifth Third") from a January 28, 2010 judgment by the United States Bankruptcy Court for the Western District of Kentucky. The bankruptcy court held that appellees JPMorgan Chase Bank, N.A. ("Chase"), the Kenneth R. Woods and Katherine R. Woods Living Trust (the "Woods Trust"), Katherine R. Woods ("Katherine Woods"), the United States of America (the "United States") and Robert W. Keats, Trustee of the bankruptcy estate of Kenneth R. Woods (the "Trustee") (collectively, the "appellees") were entitled to avoid a mortgage Fifth Third holds on a parcel of real property owned by the Woods Trust. At the same time, the court denied Fifth Third's cross-motion for summary judgment. For the reasons set forth herein, we will **AFFIRM** in part and **REVERSE** in part the judgment of the bankruptcy court.

**BACKGROUND**

**1. The Woods Trust and Katherine Woods' Power of Attorney**

On January 31, 1997, Kenneth R. Woods ("Kenneth Woods") and his wife, Katherine Woods, executed a Trust Agreement that established the Kenneth R. and Katherine R. Woods Living Trust. The Trust corpus was made up of jointly and separately owned property

contributed by both Kenneth and Katherine. This property included the Woods' residence and surrounding acreage, which was located at the time on Dawson Hill Road in Louisville, Kentucky.[1] The Dawson Hill property is listed in the trust documents having been individually owned by Kenneth Woods at the time it was placed into the trust. *See* Trust Property, Schedule B. Both Kenneth and Katherine signed the deed conveying the Dawson Hill property to the Trust.

Kenneth and Katherine were named in the trust documents as trustors and trustees, Trust Agreement at 1-1, and the trust documents provided that, upon the death of the first spouse, the surviving spouse would receive a survivorship interest in Trust property. *See* Trust Agreement at 7-1. The Trust was fully revocable, and Katherine and Kenneth, while both were alive, held the power to revoke the trust with respect to their contributions to it.[2] Trust Agreement at 4-2.

---

[1] At some point after the Trust was formed, the street on which the property is located was re-numbered and apparently re-named. The property in question is now located on a road known as Dawson Hill Place. For the sake of clarity, we will refer to it as the "Dawson Hill property."

[2] The revocation provision read as follows:

> Except as to any irrevocable Retirement Subtrust, while both of us are alive, we may at any time or times, by written notice filed with our Trustee, amend any provision hereof or revoke our Trust in whole or in part, provided, however, that each of us shall only hold the powers to amend or revoke as to each Trustor's respective Contributive Share in our Trust Estate; and each Trustor shall have the power to partition our Trust into separate trusts consisting of each Trustor's respective Contributive Share.

Trust Agreement at 4-2.

"Contributive Share," as defined in Article 15 of the Trust Agreement, is "property transferred to [the] Trust Estate by such Trustor during life or at death." Trust Agreement at 15-3.

The Trust Agreement granted the trustee or trustees of the Woods Trust broad powers and discretion with respect to Trust property. Article Fourteen of the Trust Agreement sets forth these powers, stating

> [o]ur Trustee shall have the power to borrow funds from any person, including our Trustee; to guarantee indebtedness or indemnify others in the name of our Trust and to secure such obligation by mortgage, pledge, security interest or other encumbrance . . . .

Trust Agreement at 14-4.

The preamble to Article 14 enhances this authority, explaining that "it is [the Woods'] intention that our Trustee have the power respecting our Trust Estate that an absolute owner of such property would have." Trust Agreement at 14-1.

The Trust Agreement also provides specific instruction about the authority of the trustee or trustees when one or both of the trustors is serving as trustee:

> Unless otherwise provided in our Trust Agreement, if either one of us is serving as a Trustee under our Trust Agreement, that Trustee may make decisions and bind our Trust in the exercise of all powers and discretions granted to us as Trustees without the consent of any other Trustee. Any Trustor acting under this [Section] may only deal with the other Trustor's Contributive Share in a fiduciary capacity.

Trust Agreement at 13-1. *See also* Trust Agreement at 1-1.

The Trust Agreement is accompanied by a Certificate of Trust, executed at the same time as the Trust Agreement. The Certificate purports to provide a summary of the terms of the Trust. It sets forth the powers of the Woods Trust trustee or trustees as follows:

> 5. Unless otherwise provided in the trust agreement, when either one of us is serving as Trustee under the trust, that Trustee may conduct business and act on behalf of the trust without the consent of any other Trustees.
>
> 6. The Trustees under the trust agreement are authorized to acquire, sell, convey, encumber, lease, borrow, manage, and otherwise deal with interests in real and

personal property in trust name. All powers of the Trustees are fully set forth in
Article Fourteen of the trust agreement.

Certificate of Trust at 1.

At the same time they created the Woods Trust, Kenneth and Katherine Woods also executed documents establishing durable Powers of Attorney so that each could act on behalf of the other in the event of incapacity. Katherine's Power of Attorney specifically provided that it would become effective upon her incapacity, which was defined as follows:

> . . . I shall be deemed "incapacitated" if and so long as (i) a court of competent jurisdiction has made a finding to that effect . . . (ii) upon certification by two physicians . . . [that] I am unable to properly care for myself or for my person or property, which certification shall be made by each physician in a written declaration under penalty of perjury; or (iii) I am unable freely to communicate for a period of ninety (90) days.

Katherine Woods Power of Attorney at 2-1.

Kenneth Woods was first on the list of individuals authorized to exercise power of attorney upon Katherine's incapacity. *Id.* 1-1. However, Katherine Woods has never been "incapacitated" as defined in her Power of Attorney documents.

**2. The Fifth Third Mortgage**

In 2006, Kenneth Woods applied for an equity line of credit with Fifth Third to help finance AutoSource USA, a car sales business he co-owned. As security, Kenneth sought to mortgage the Dawson Hill property held by the Woods Trust. Before applying for the loan, Kenneth had asked for Katherine's permission to mortgage the property, which she declined to give. Kenneth applied for the loan anyway, and Fifth Third approved his application. Prior to closing, Kenneth Woods provided Fifth Third with the trust documents, and Fifth Third prepared a mortgage with four signature blanks: one for Kenneth Woods individually, one for Kenneth

Woods as trustee of the Woods Trust, one for Katherine Woods individually, and one for Katherine Woods as the trustee of the Woods Trust.

When the time came to close the loan, Kenneth informed Fifth Third that Katherine was in Florida and could not sign the documents, and that the transaction could not be completed unless Fifth Third would accept Katherine's Power of Attorney. Fifth Third asked for a copy of the Power of Attorney, which Kenneth provided. Fifth Third then allowed Kenneth to execute the mortgage by signing on his behalf and Katherine's behalf, both individually and as trustees. There is no evidence that Fifth Third ever asked Kenneth about Katherine's incapacity or inquired as to the efficacy of the Power of Attorney.

A Fifth Third sales assistant notarized the mortgage and Fifth Third extended Woods a $400,000 line of credit. Woods eventually disbursed these funds to his personal account and to the AutoSource USA checking account, but did not use the money for the benefit of Katherine or the Trust. Fifth Third never contacted Katherine about the mortgage, and Kenneth did not tell her about it after he signed the loan documents.

### 3. Kenneth Woods' Chapter 7 Filing

Sometime between the signing of the mortgage and mid-2008, Kenneth Woods began to experience financial troubles that culminated in his filing for bankruptcy. In February 2008, Chase recorded a judgment lien against Kenneth Woods in the amount of $55,961.18. In April 2008, the United States Internal Revenue Service filed a notice of federal tax lien against both Kenneth and Katherine. Katherine finally learned of the mortgage's existence in May 2008, and in June 2008 filed a complaint on behalf of herself and the Woods Trust against Fifth Third in Jefferson County, Kentucky, Circuit Court seeking to have the Fifth Third mortgage declared

void. On June 11, 2008, Kenneth Woods filed a voluntary petition with the United States Bankruptcy Court for the Western District of Kentucky seeking relief under Chapter 7 of the United States Bankruptcy Code.

In November 2008, Chase began an adversary proceeding in the bankruptcy court to determine the priority and extent of liens on the Dawson Hill property. In late 2009, Chase, the Woods Trust, Katherine Woods, the United States, and the Trustee all filed motions for summary judgment.[3] Fifth Third filed a cross-motion for summary judgment. Chase sought to avoid the Fifth Third mortgage, while Fifth Third sought a judgment that its lien on the Dawson Hill property was superior to that of other creditors. The bankruptcy court entered a judgment holding that Chase and the other appellees were entitled to avoid the Fifth Third mortgage as a matter of law, and denied Fifth Third's motion for summary judgment. The court concluded that the Dawson Hill property was properly considered part of the bankruptcy estate; that Kenneth Woods' execution of the mortgage was void because he lacked the authority as co-trustee of the Woods Trust to mortgage the property without Katherine Woods' consent; and that the mortgage was not properly acknowledged by a notary under Kentucky law. Fifth Third filed a motion to alter, amend, or vacate the judgment, which the bankruptcy court denied. Fifth Third now appeals to this court.

**ANALYSIS**

Because the bankruptcy court's judgment is a final order, this court has appellate jurisdiction over the court's decision pursuant to 28 U.S.C. § 158(a)(1). A district court reviews

---

[3]The Trustee actually filed a Motion to Declare Real Estate Property of the Debtor Estate, Avoid the Lien of Fifth Third Bank, and Allow Trustee's Motion to Sell Real Estate Free and Clear. However, the bankruptcy court treated this motion as a motion for summary judgment.

the bankruptcy court's findings of fact for clear error. FED. R. BANKR. P. 8013, and reviews its conclusions of law – including a decision to grant or deny summary judgment – *de novo*. *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004). Federal Rule of Bankruptcy Procedure 7056 adopts the summary judgment standard of Federal Rule of Civil Procedure 56, which states that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Fifth Third does not dispute the bankruptcy court's findings of fact. Rather, it argues that the bankruptcy court erred in granting judgment to the appellees as a matter of law because (1) the trust property was not part of Kenneth Woods' bankruptcy estate, and therefore the bankruptcy court lacked jurisdiction over the case; (2) the trust documents granted Kenneth Woods the authority to encumber the trust property without Katherine Woods' consent; (3) the mortgage was not void as a result of a defective notarial acknowledgment; and (4) because Fifth Third was entitled, under Kentucky law, to rely on Kenneth Woods' representations of his own authority as trustee of the Woods Trust.

**1. Inclusion of Trust Property in the Bankruptcy Estate**

A debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The estate includes "[a]ny interest which a debtor retains in a trust . . . including the power to amend the trust and the power to revoke a revocable trust and recover the remaining funds in the trust for the benefit of the creditors." *Askanase v. LivingWell, Inc.*, 45 F.3d 103, 106 (5th Cir. 1995) (quoting *In re Gifford*, 93 B.R. 636, 640 (Bankr. N.D. Ind. 1988)). *See also In re West*, No. 06-1022, 2009 WL 2713331

(Bankr. W.D. Ky. Aug. 25, 2009). "Thus, what comes to the bankruptcy estate is not only the property in which [the] debtor has an interest, but also, the powers the debtor can exercise for its own benefit over property regardless of the title [the] debtor may be acting under." *Gifford*, 93 B.R. at 640.[4]

The Trust Agreement makes clear that the Woods Trust is revocable. While both Kenneth and Katherine are living, they hold the power to revoke their respective contributive shares of the trust upon written notice to their trustee. Kenneth Woods' interest in the Dawson Hill property is properly classified as part of Kenneth Woods' contributive share under the terms of the trust because it is property that he transferred to the trust estate during his lifetime. Thus, he had the power to revoke the trust with respect to his interest that property at any time, and it is properly included as part of his bankruptcy estate. The bankruptcy court did not err in its conclusion on this point.

**2. Kenneth Woods' Authority to Mortgage the Dawson Hill Property**

We now turn to the main issue in this case: whether Kenneth Woods had the authority to mortgage the Dawson Hill property without Katherine Woods' consent. Kenneth Woods' use of Katherine Woods' Power of Attorney to sign the mortgage was unquestionably invalid because Katherine has never been "incapacitated" as defined in the Power of Attorney documents. Therefore, the answer to this question turns on whether the Trust Agreement granted Kenneth Woods, as trustee of the Woods Trust, the power to encumber Trust property without Katherine Woods' consent.

---

[4]The Bankruptcy Code provides that a debtor's assets are excluded from the state if they are subject to a restriction on transfer that is valid under non-bankruptcy law. *See* 11 U.S.C. § 541(c)(2). Fifth Third does not allege – nor do we find – such a restriction present in the Woods Trust Agreement.

When interpreting a trust agreement, a court must endeavor to determine the maker's intent from the words used within the agreement itself. *Dept. of Revenue v. Ky. Trust Co.*, 313 S.W.2d 401, 404 (Ky. App. 1958). Where possible, all parts of the instrument must be given effect and every part of the instrument must be read in conjunction with every other part. *Id.* In the absence of ambiguity, a court must strictly enforce a written instrument according to its own terms, assigning language its ordinary meaning and without resorting to extrinsic evidence. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). However, where ambiguity in the trust instrument exists, "the court may not only consider what is expressed in [a trust instrument], but may also look at the conduct of the parties affected by the instrument in their performance of it," including actions taken by a party that were ostensibly pursuant to the terms of the trust instrument. *Norton v. Citizens Fidelity Bank & Trust Co.*, 357 S.W.2d 313, 316 (Ky. App. 1962) (quoting 90 C.J.S. *Trusts* § 165C).

The bankruptcy court held that the trust documents were ambiguous. It found the ambiguity by comparing the provisions of the Trust Agreement and Trust Certificate that granted individual authority to the trustor/trustees with a provision in the Trust Certificate stating that "[t]he *Trustees* under the trust agreement are authorized to acquire, sell, convey, encumber, lease, borrow, manage and otherwise deal with interests in real and personal property in trust name." Certificate of Trust at 1 (emphasis added). The court found that this provision "indicate[s] that both parties must consent to an encumbrance of Trust property." Because, however, "the Trust itself references action by a single trustee regarding the conducting of business on behalf of the Trust," the court found that the documents contained an ambiguity. The court then looked to evidence of the Woods' intent in creating the trust, including their past

conduct with respect to trust property, and concluded that they intended that the consent of both trustees be required to encumber trust property.

We disagree with the bankruptcy court's finding of ambiguity. An instrument is ambiguous only "if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citation omitted). No such inconsistency is present here. The use of the word "Trustees" in the Trust Certificate does not require or even "indicate" that both trustees must consent to the encumbrance of property. Rather, such use indicates only that the drafter of the agreement contemplated the existence of multiple trustees; it does not demand that said trustees must act in concert when dealing with interests in the property held in the trust's name. Thus, this provision does not contradict the grant of individual authority to trustor/trustees. The trust documents are not ambiguous, and we will accordingly look only to the language in the trust documents to determine the extent of Kenneth Woods' authority.

As we noted above, the trust documents grant the trustees broad authority to encumber trust property. *See* Trust Agreement at 14-4 ("Our Trustee shall have the power to borrow funds from any person . . . to guarantee indebtedness or indemnify others in the name of our Trust and to secure any such obligation by mortgage . . . ."); *see also* Trust Agreement at 14-1 ("In addition to any power hereinafter specifically granted to our Trustee, it is our intention that our Trustee have the power respecting our Trust Estate that an absolute owner of such property would have."). Also as noted above, the Trust Agreement grants Kenneth and Katherine, when either one is serving as trustee, the power to act without the consent of any other trustee, with the

caveat that each deal with the other's contributive share only "in a fiduciary capacity." Trust Agreement at 1-1.

It is undisputed that Kenneth Woods was serving as a trustee when he signed the Fifth Third mortgage. He therefore had the power granted to trustees – including the power to grant a mortgage on trust property. He also had the authority, under the Trust Agreement, to do so without the consent of any other trustee – including Katherine. Thus, Katherine's signature was not necessary to mortgage the Dawson Hill property, and Fifth Third's mortgage is valid.[5] The bankruptcy court's judgment on this count will be reversed.

### 3. Validity of Notarization

The bankruptcy court also held that the Fifth Third mortgage was not valid because the notarial certification on the mortgage stated that Katherine Woods had appeared in person to sign the mortgage, when in fact she had not.[6] The court held that this rendered the mortgage's

---

[5] We do note that Kenneth Woods may have breached the terms of the Trust Agreement by not dealing with the proceeds from the mortgage "in a fiduciary capacity." Although the Dawson Hill property was in Kenneth's name, Katherine would have had a dower interest in the property. *See* KY. REV. STAT. § 392.020 ("After the death of the husband or wife intestate, the survivor shall have an estate in fee of one-half . . . of the surplus real estate of which the other spouse . . . was seized of an estate in fee simple at the time of death . . . ."). Katherine transferred this interest to the Woods Trust when she signed the deed; thus, her dower interest is properly considered part of her "contributive share." The Trust Agreement requires Kenneth Woods to deal with Katherine's interest in the property "in a fiduciary capacity." It is not clear what this term means, or whether Kenneth breached it. The resolution of this question does not matter for the purposes of this opinion because the manner in which Kenneth treated the loan proceeds does not affect the validity of Fifth Third's mortgage.

[6] The notarial certificate states:

On this 4th day of April, 2006, before me, a Notary Public in and for said County and State, personally appeared

KENNETH R. AND KATHERINE R. WOODS LIVING TRUST U/A DATED JANUARY 31, 1997, HUSBAND AND WIFE,
the individuals) [sic] who executed the foregoing instrument and acknowledged that
continue...

notarization – and therefore the mortgage itself – invalid. The court based its conclusion on KY. REV. STAT. § 382.270, which at the time the Fifth Third mortgage was executed provided:

> No deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law and lodged for record. As used in this section "creditors" includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance.

KY. REV. STAT. § 382.270 (2002).

The notarial acknowledgment was defective in that it attested to Katherine's presence when she was not there. *See* KY. REV. STAT. § 423.130 ("The person taking an acknowledgment shall certify that: (1) The person acknowledging appeared before him and acknowledged he executed the instrument; and (2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument."). However, amendments to KRS § 382.270 have limited the voidability of mortgages for invalid notarizations. The version of the statute in effect at the time Kenneth Woods filed for bankruptcy[7] reads:

> No deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be lodged for record and, thus, valid against a purchaser for a

---

[6]...continue
HE/SHE did examine and read the same and did sign the foregoing instrument, and that the same is HIS/HER free act and deed.

Fifth Third Mortgage at 6.

[7]The statute was amended in 2010 to remove the July 12, 2006 date restriction. However, the version of the statute we must consider in this case is the one that was in effect at the time of Kenneth Woods' bankruptcy filing in 2008. *See In re Trujillo*, 378 B.R. 526, 537–39 (B.A.P. 6th Cir. 2007). However, under either version of the statute, the alleged defect does not provide grounds for voiding the mortgage.

- 12 -

> valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law. *However, if a deed or deed of trust or mortgage conveying a legal or equitable title to real property is not so acknowledged or proved according to law, but is or has been, prior to July 12, 2006, otherwise lodged for record, such deed or deed of trust or mortgage conveying a legal or equitable title to real property or creating a mortgage lien on real property shall be deemed to be validly lodged for record for purposes of KRS Chapter 382, and all interested parties shall be on constructive notice of the contents thereof* . . . .

KY. REV. STAT. § 382.270 (2006) (emphasis added).

By virtue of the last sentence of the statute, the defect in the notarial acknowledgment does not render the Fifth Third mortgage void. The mortgage was recorded in May 2006 – prior to the effective date of the statute – and therefore falls within the statute's "saving" provision. The mortgage may not be voided on the grounds of any alleged defect in the notarization.

**4. KRS § 386.830**

Finally, Fifth Third claims that its mortgage is valid based on KY. REV. STAT. § 386.830, which states:

> With respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, the existence of trust powers and their proper exercise by the trustee may be assumed without inquiry. The third person is not bound to inquire whether the trustee has power to act or is properly exercising the power; and a third person, without actual knowledge that the trustee is exceeding his powers or improperly exercising them, is fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers he purports to exercise. A third person is not bound to assure the proper application of trust assets paid or delivered to the trustee.

KY. REV. STAT. § 386.830.

Because we have already concluded that Kenneth Woods did not exceed his powers as trustee when he mortgaged the trust property, this argument need not be addressed in depth. We do note, however, that the last sentence of this statute bolsters our conclusion that any failure on

- 13 -

Kenneth's part to treat Katherine's interest in the property "in a fiduciary capacity" does not provide grounds for voiding the mortgage. Because "[a] third person is not bound to assure the proper application of trust assets paid or delivered to the trustee," KY. REV. STAT. § 386.830, *supra*, Fifth Third had no obligation to monitor the manner in which Kenneth spent the mortgage proceeds. Therefore, any action Kenneth took subsequent to signing the mortgage – such as using the profits from the mortgage to fund his own business instead of for Katherine's benefit – does not affect Fifth Third's interest in the property.

## CONCLUSION

For the foregoing reasons, we will affirm in part and reverse in part the judgment of the bankruptcy court. The Dawson Hill property is properly considered part of Kenneth Woods' bankruptcy estate, but Fifth Third's mortgage on the property is valid.

A separate order will issue in accordance with this opinion.